FILED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## (ALEXANDRIA DIVISION)

2013 JAN -3 P 12: 20

| | |
|---|---|
| BRADLEY CHRISTOPHER KAHL, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Case No. _1:13CV 7- LO/IDD_ |
| ) | |
| Plaintiff, ) | DIRECT SHAREHOLDER CLASS ACTION COMPLAINT FOR BREACH OF |
| ) | FIDUCIARY DUTIES |
| vs. ) | |
| ) | |
| ELOQUA, INC., JOSEPH P. PAYNE, NEAL ) DEMPSEY, STEPHEN M. SWAD, ) BRADFORD D. WOLOSON, BYRON B. ) DEETER, JOHN J. MCDONNELL, JR., ) THOMAS REILLY, OC ACQUISITION LLC, ) ESPERANZA ACQUISITION ) CORPORATION, and ORACLE ) CORPORATION, ) | CLASS REPRESENTATION  DEMAND FOR JURY TRIAL |
| ) | |
| Defendants. ) ) | |

Plaintiff Bradley Christopher Kahl ("Plaintiff"), by his undersigned counsel, submits this

Direct Shareholder Class Action Complaint against the herein-named Defendants, and in support

thereof, alleges as follows:

### SUMMARY OF THE ACTION

1.      This is a direct shareholder class action brought by Plaintiff on behalf of himself and

the public holders of Eloqua, Inc. ("Eloqua" or the "Company") common stock against Eloqua, its

Board of Directors (the "Board"), and Oracle Corporation ("Oracle"), arising out of the Board's

decision to sell the Company to Oracle through an inherently unfair process that yielded an unfair

price (the "Proposed Transaction"). In pursuing the Proposed Transaction, each of the herein-named

defendants have violated applicable law by directly breaching and/or aiding and abetting breaches of

fiduciary duties owed to Plaintiff and the proposed class of Eloqua shareholders.

2.     On December 20, 2012, the Company announced that it had entered into an Agreement and Plan of Merger to be acquired by Oracle (the "Merger Agreement"). Under the terms of the Merger Agreement, Eloqua shareholders will receive $23.50 in cash for each share of Eloqua common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $871 million and is expected to close during the first half of 2013.

3.     The Proposed Transaction is the product of a fundamentally unfair process, which yielded an unfair price, and that is designed to ensure the acquisition of Eloqua by Oracle on terms preferential to Oracle and Eloqua's Board members, but detrimental to Plaintiff and the other public stockholders of Eloqua.

4.     Indeed, the Board suffers from incurable conflicts of interest that tainted the entire sales process. For example, as detailed herein, Defendants Byron B. Deeter ("Deeter") and Thomas Reilly ("Reilly"), Eloqua Board members, share a close personal relationship that goes back, at least, to November of 2000 when Defendant Reilly took over Defendant Deeter's position as chief executive officer ("CEO") of Trigo Technologies, Inc. ("Trigo"). Furthermore, as detailed herein, the Proposed Transaction will handsomely reward the Board members who approved the Merger Agreement, including Defendants Stephen M. Swad ("Swad"), John J. McDonnell, Jr. ("McDonnell"), and Joseph P. Payne ("Payne"), Chairman of the Board and CEO of Eloqua, through accelerated vesting of Company stock options and change in control payments. These conflicts of interest call into question Defendants' ability to faithfully exercise their fiduciary duties owed to Plaintiff and the other Eloqua shareholders with respect to their approval of the Merger Agreement.

5.     These conflicts of interest, along with the Board's approval of the Merger Agreement, are all the more troubling in light of the fact that the aforementioned conflicted Board members, along with certain executive officers and certain large stockholders, collectively controlling approximately 57% of Eloqua's outstanding common stock, have entered into voting agreement (the

2

"Voting Agreement") pursuant to which they have agreed, among other things, to vote their shares of Eloqua common stock in favor of the Proposed Transaction. Because the parties to the Voting Agreement control 57% of Eloqua's outstanding common stock, Defendants are able to consummate the Proposed Transaction without the approval of Plaintiff and the other Eloqua shareholders.

6. The unfair sales process, as alleged herein, also yielded a $23.50 share price which clearly undervalues the Company as Eloqua stock traded at $24.65 – $1.15 above the Merger Consideration – just 49 days before Defendants announced the Proposed Transaction. Indeed, the Merger Consideration is merely an attempt by Defendants to sell the Company to Oracle for a bargain during a temporary downturn in Eloqua's stock price. To be sure, not only does the Merger Consideration represent a discount to Eloqua's true current value, but it also fails to reflect the Company's undeniable growth potential. As Defendant Payne publicly stated in a Company press release issued on October 24, 2012: "Our continued strong execution, combined with the increasing demand for our Modern Marketing solutions and our ability to deliver proven value, *enabled us to grow subscription and support revenue by 32% year-over-year.*" (emphasis added). Furthermore, the Merger Consideration does not adequately compensate Eloqua shareholders for the significant synergistic value that the Company will provide to Oracle.

7. And to make matter worse, in order to secure the benefits that the Proposed Transaction will provide them, Defendants have agreed to a barrage of deal protection devices to lock-up the deal by deterring any potential topping bidders. Among other things, the Merger Agreement forbids Eloqua from soliciting alternative business combinations. In the event that a topping bidder were to emerge, the Merger Agreement requires the Company to provide Oracle with detailed information in writing about the topping bid, as well as copies of the communications Eloqua has with the topping bidder makes. The Company then has to provide Oracle with 48 hours notice prior to even holding a board meeting to discuss the topping offer. Then the Merger

Agreement grants Oracle with lengthy, five-day matching rights. The Merger Agreement also requires Eloqua to reaffirm its recommendation of the Proposed Transaction within 10 days after requested by Oracle. The Merger Agreement also burdens Eloqua with a termination fee of $31.5 million if the Company accepts a topping bid, as well as up to $5 million in additional expenses. The collective layering effect of the deal protection devices, especially considering the highly-competitive software computing industry, serves to preclude topping bidders from emerging.

8.      Unless enjoined by this Court, Defendants will continue to breach their fiduciary duties owed to Eloqua and its shareholders and will consummate the Proposed Transaction, which will result in irreparable harm to the Company and its shareholders who will forever lose their equity interest in the Company for an inadequate price.

9.      This action seeks equitable relief only.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendants. Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are citizens.

11.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District, and because Defendants:

(a) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District; and

(b) conduct substantial business in this District.

12.      This Court has personal jurisdiction over Defendants because a substantial portion of the conduct complained of herein took place in the State of Virginia and because Defendants are

4

authorized to conduct business in this state and have sufficient minimum contacts with this state so as to render the exercise of personal jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## PARTIES

13.     Plaintiff is, and at all relevant times was, a shareholder of Eloqua.

14.     Defendant Eloqua, Inc. is a publicly traded Delaware corporation that maintains its corporate headquarters at 1921 Gallows Road, Suite 200, Vienna, Virginia 22182. Eloqua provides on-demand revenue performance management ("RPM") software solutions that are designed to enable businesses to accelerate revenue growth and improve revenue predictability by automating, monitoring and measuring their complex marketing and sales initiatives. The Company's set of RPM solutions is a software-as-a-service ("Saas") platform integrating its marketing automation software with its revenue performance analytics suite. The Company derives its revenue from four sources: subscription revenue relating to subscription fees from customers accessing its on-demand application service; customer support beyond the standard support that is included in the basic subscription fee; installation and deployment services, and other professional service revenue from consultation and training fees. Eloqua common stock is listed and traded on the NASDAQ stock exchange under the ticker "ELOQ."

15.     Defendant Joseph P. Payne is, and at all relevant times was, Chairman of the Board and CEO of Eloqua. Payne has served as the Company's CEO and as a member of the Board since June 2007, and as Chairman of the Board since August 2011. Payne also served as the Company's President from June 2007 until September 2012 and as the Company's interim president and CEO from January 2007 to June 2007. Payne also previously served as president of Qualys, Inc. during October 2006 and as president and chief operating officer of iDefense, a VeriSign company, from

April 2005 to October 2006. Prior to joining iDefense, Payne served as president and CEO of eSecurity Inc., eGrail, Inc. and IntelliData Technologies, Inc.

16.    Defendant Neal Dempsey ("Dempsey") is, and at all relevant times was, a Director of Eloqua. Dempsey has been a general partner of Bay Partners, a venture capital firm, since May 1989, and the managing general partner since July 2002. Dempsey joined Bay Partners after a business career including five years as CEO of Qubix Graphics Systems, one year as CEO of Envision Technology, and several senior management positions with Zentec and Harris Corporation. Dempsey currently serves as a director of Guidewire Software, Inc. and Enphase Energy, Inc. and is a former director of Brocade Communications Systems.

17.    Defendant Stephen M. Swad is, and at all relevant times was, a Director of Eloqua. Swad has served as Director of the Company since August 2011. In addition to his position on the Board, Swad has served as president, CEO, and as Director of Rosetta Stone, Inc. since February 2012. From November 2010 to February 2012, Swad served as chief financial officer of Rosetta Stone, Inc. Swad previously served as executive vice president and chief financial officer of Comverse Technology, Inc. from May 2009 to October 2010 and as special advisor to the CEO of Comverse from October 2010 to November 2010. From May 2007 to August 2008, Swad served as executive vice president and chief financial officer of Federal National Mortgage Association (Fannie Mae), a federally chartered provider of funding for the secondary housing mortgage market. Swad previously served as executive vice president and chief financial officer of AOL LLC, a global web services company, from February 2003 to February 2007. Swad also served as executive vice president of finance and administration at Turner Entertainment Group, and vice president, financial planning and analysis at Time Warner.

18.    Defendant Bradford D. Woloson ("Woloson") is, and at all relevant times was, a Director of Eloqua. Woloson has served as a Director of the Company since 1994. Woloson has

6

also served in several positions at JMI Equity Fund, a venture capital firm, including currently as general partner. Woloson is also a director of several private companies and a former director of Unica Corporation. Prior to joining JMI Equity Fund in 1994, Woloson was a financial analyst in the Technology Group at Alex. Brown. Prior to Alex. Brown, Woloson was a fixed income analyst at Kidder Peabody International, Inc. in London.

19. Defendant Byron B. Deeter is, and at all relevant times was, a Director of Eloqua. Deeter is also a partner of Bessemer Venture Partners, a venture capital firm, where he has held various positions since he joined the firm in 2005, and is presently a managing member of the firm's management company. Prior to joining Bessemer Venture Partners, Deeter was a director at International Business Machines Corporation ("IBM") from April 2004 to April 2005. As a Director of IBM, Deeter worked closely with Defendant Reilly, who served as vice president of business information services of IBM from April 2004 to November 2006. Before IBM, Deeter and Defendant Reilly worked together at Trigo where Deeter served as president and CEO of the company from January 2000 to November 2000, until being replaced by Defendant Reilly who served as CEO from November 2000 until April 2004. During Reilly's tenure as CEO of Trigo, Deeter remained with the company, working alongside Reilly as vice president, business development, from November 2000 to April 2004. Prior to Trigo, Deeter worked as an associate with TA Associates, a private equity firm, from June 1998 to January 2000, and as an analyst at McKinsey & Company, a management consulting firm, from September 1996 to June 1998. Deeter currently serves as a director of Cornerstone OnDemand, Inc.

20. Defendant John J. McDonnell, Jr. is, and at all relevant times was, a Director of Eloqua. McDonnell has also served as chairman and CEO of Phoenix Managed Networks since February 2010, and previously served as chairman and CEO of ExaDigm Inc. from October 2008 to February 2010. McDonnell is the founder of TNS, Inc., a provider of data communications services

to processors of credit card, debit card and ATM transactions worldwide. McDonnell served as chairman, CEO, and a director of TNS, Inc. from April 2001 to September 2006 and previously from 1990 to 1999 (when the company was Transaction Network Services, Inc.). McDonnell also served as chairman and CEO of PaylinX Corp., a software provider for transaction processing, from November 1999 until it was sold to CyberSource Corporation in September 2000. McDonnell served as a director of CyberSource from September 2000 until its sale to Visa Inc. in July 2010. McDonnell currently serves as a director of DealerTrack Holdings, Inc. and several privately-held companies.

21.     Defendant Thomas J. Reilly is, and at all relevant times was, Director of Eloqua. Reilly has served as a Director of the Company since April 2012. From October 2010 to May 2012, Reilly served as vice president and general manager of HP Enterprise Security Products. Reilly served as CEO, president, and director of ArcSight, Inc. from October 2008, August 2007 and June 2008, respectively, until its acquisition by HP in October 2010. Reilly also previously served as the chief operating officer of ArcSight, Inc. from November 2006 to September 2008. From April 2004 to November 2006, Reilly served as vice president of business information services of IBM, alongside Defendant Deeter who was a director of the company from April 2004 until April 2005, and from November 2000 until its acquisition by IBM in April 2004, Reilly served as CEO of Trigo, also alongside Defendant Deeter. Prior to Trigo, Reilly held various general management and sales leadership roles at IBM, Lotus Development, and BroadQuest.

22.     The Defendants identified above in paragraphs 15 though 21 are at times collectively referred to herein as the "Individual Defendants."

23.     Defendant Oracle Corporation is a publicly traded Delaware corporation that maintains its corporate headquarters at 500 Oracle Parkway, Redwood City, California 94065. Oracle is a provider of enterprise software and computer hardware products and services. The

8

Company's software, hardware systems, and services businesses develops, manufactures, markets, hosts and supports database and middleware software, applications software, and hardware systems, with the latter consisting primarily of computer server and storage products. Oracle stock is listed and traded on the NASDAQ stock exchange under the ticker "ORCL."

24.     Defendant OC Acquisition LLC is a Delaware limited liability company, a wholly owned subsidiary of Defendant Oracle, and a vehicle through which Defendants intend to effectuate the Proposed Transaction.

25.     Defendant Esperanza Acquisition Corporation is a Delaware corporation, a wholly owned subsidiary of Defendant OC Acquisition LLC, and a vehicle through which Defendants intend to effectuate the Proposed Transaction.

26.     Defendants Oracle, OC Acquisition LLC, and Esperanza Acquisition Corporation are collectively referred to herein as Oracle.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

27.     Under applicable law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors and/or officers may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits themselves from complying with their fiduciary duties;

9

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

28.     In accordance with their duties of loyalty and good faith, Defendants, as directors and/or officers of Eloqua, are obligated under applicable law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

29.     Plaintiff alleges herein that Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith and independence owed to Plaintiff and other public shareholders of Eloqua. Defendants stand on both sides of the transaction, are engaging in self dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by Plaintiff or the Class, and are choosing to not provide shareholders with all information necessary to make an informed decision in connection with the Proposed Transaction. As a result of Defendants' self dealing and divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their Eloqua common stock in the Proposed Transaction.

30.     Because Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, and independence in connection with the Proposed Transaction, the burden of proving

10

the inherent or entire fairness of the Proposed Transaction, including all aspects of its negotiation, structure, price and terms, is placed upon Defendants as a matter of law.

## FACTUAL ALLEGATIONS

### *The Company is Poised for Success*

31.    Eloqua, a leading provider of cloud-based marketing automation and revenue performance management software, was founded as a privately held company in 1999.

32.    On August 7, 2012, the Company issued a press release announced the closing of its Initial Public Offering ("IPO") of 8,000,000 shares of common stock at a price to the public of $11.50 per share. In connection with the IPO, the underwriters exercised in full their option to purchase an additional 1,200,000 shares of common stock from the Company. As a result, the total initial public offering size was 9,200,000 shares.

33.    Approximately two and a half months later, on October 24, 2012, Eloqua announced the release of its Third Quarter 2012 Results. For its third quarter – the Company's first publicly released financial results since its IPO – Eloqua announced *record results* consisting of an *increase in Total Revenue of 30%* to a record $23.8 million, an *increase in Subscription and Support Revenue of 32%* to $21.6 million, and an *increase in Professional Services Revenue of 12%* to $2.2 million.

34.    Commenting on the Company's third quarter results, Defendant Payne, Eloqua's CEO and Chairman of the Board, stated the following in a press release:

> Our continued strong execution, combined with the increasing demand for our Modern Marketing solutions and our ability to deliver proven value, *enabled us to grow subscription and support revenue by 32% year-over-year.* By managing a company's interactions with buyers through the entire purchasing process, our unmatched solutions are increasing marketing and sales effectiveness and enabling dramatically more predictable and profitable revenue growth for our customers. We are excited to have completed our initial public offering, which marked a major milestone in our history. This further enhances our brand and increases the resources we have available to execute our long-term plans and drive significant levels of growth.

11

(emphasis added).

35.    In addition to these impressive *record results*, the Company also issued Fourth Quarter 2012 revenue and EBIT[1] guidance that exceeded analyst's estimates, which reveal Eloqua management's (including Defendant Payne) favorable views regarding the Company's future outlook and growth potential.   Upon the announcement of the Company's Fourth Quarter 2012 guidance, Eloqua's stock price soared to a peak of $24.65 per share ($1.15 above the Merger Consideration) on November 1, 2012:

[remainder of page left blank intentionally]



***Defendants Announce the Unfair Proposed Transaction***

36.    Inexplicably, just 49 days later, despite Eloqua's impressive third quarter results and its favorable future outlook, on December 20, 2012, Defendants announced the unfair Proposed Transaction that will cash out Plaintiff and the other Eloqua shareholders for $23.50 per share - $1.15 *less* than what the Company's stock was trading at only 49 days prior:

**Oracle Buys Eloqua**

---

[1]    This accounting designation stands for "Earnings Before Interest and Tax."

12

**Adds Leading Modern Marketing Platform to the Oracle Cloud to Help Companies Deliver Exceptional Customer Experiences**

December 20, 2012

Oracle today announced that it has entered into an agreement to acquire Eloqua, Inc. (NASDAQ: ELOQ), a leading provider of cloud-based marketing automation and revenue performance management software for $23.50 per share or approximately $871 million, net of Eloqua's cash. Eloqua's modern marketing cloud delivers best-in-class capabilities to ensure every component of marketing works harder and more efficiently to drive revenue.

The combination of Oracle and Eloqua is expected to create a comprehensive Customer Experience Cloud offering to help companies transform the way they market, sell, support and serve their customers. The combined offering is expected to enable organizations to provide a highly personalized and unified experience across channels, create brand loyalty through social and online interactions, grow revenue by driving more qualified leads to sales teams, and provide superior service at every touchpoint.

The Board of Directors of Eloqua has unanimously approved the transaction. The transaction is expected to close in the first half of 2013, subject to Eloqua stockholder approval, certain regulatory approvals and other customary closing conditions.

"Modern marketing practices are driving revenue growth and is a critical area of investment for companies today," said Thomas Kurian, Executive Vice President, Oracle Development. "Eloqua's leading marketing automation cloud will become the centerpiece of the Oracle Marketing Cloud and is an important addition to the Oracle Customer Experience offering, which includes the Oracle Sales Cloud, Oracle Commerce Cloud, Oracle Service Cloud, Oracle Content Cloud and Oracle Social Cloud."

"Exceptional customer experience starts with knowing your customer's preferences and delivering a highly personalized buying experience," said Joe Payne, Chairman and CEO, Eloqua. "Together with Oracle, we expect to accelerate the pace of the modern marketing revolution and help our customers transform the way they market, sell, support and serve their customers."

\* \* \*

37.     The Proposed Transaction is the product of a fundamentally unfair process, which

yielded an unfair price, and that is designed to ensure the acquisition of Eloqua by Oracle on terms

preferential to Oracle and Eloqua's Board members, but detrimental to Plaintiff and the other public

stockholders of Eloqua.

13

38.     For example Defendants Deeter and Reilly, Eloqua Board members, share a close personal relationship that goes back, at least, to November of 2000 when Defendant Reilly took over Defendant Deeter's position as CEO of Trigo. Defendant Deeter remained with Trigo, working as a vice president of business development, along side Defendant Deeter. These two Defendants continued working together at Trigo until it was acquired by IBM in April of 2004, and up through Defendant Deeter's departure from the company in April of 2005.

39.     Furthermore, the Proposed Transaction will handsomely reward the Board members who approved the Merger Agreement, including Defendants Swad, McDonnell, and Payne, Chairman of the Board and CEO of Eloqua, through accelerated vesting of Company stock options and change in control payments. Specifically, pursuant to the Merger Agreement, Defendant Swad will be paid approximately $846,000 through the accelerated vesting of his Company stock equity awards. Similarly, Defendant McDonnell will be paid millions in change in control payments upon consummation of the Proposed Transaction. These conflicts of interest call into question Defendants' ability to faithfully exercise their fiduciary duties owed to Plaintiff and the other Eloqua shareholders with respect to their approval of the Merger Agreement.

40.     These conflicts of interest, along with the Board's approval of the Merger Agreement, are all the more troubling in light of the fact that the aforementioned conflicted Board members, along with certain executive officers and certain large stockholders, collectively controlling approximately 57% of Eloqua's outstanding common stock, have entered into Voting Agreement to vote their shares of Eloqua common stock in favor of the Proposed Transaction (the "Voting Agreement"). Because the parties to the Voting Agreement control 57% of Eloqua's outstanding common stock, Defendants are able to consummate the Proposed Transaction without the approval of Plaintiff and the other Eloqua shareholders.

41.     The unfair sales process also yielded a $23.50 share price which clearly undervalues the Company as Eloqua stock traded at $24.65 – $1.15 above the Merger Consideration – just 49 days before Defendants announced the Proposed Transaction. Indeed, the Merger Consideration is merely an attempt by Defendants to sell the Company to Oracle for a bargain during a temporary downturn in Eloqua's stock price. To be sure, Oracle's own stock price increased by approximately $1.20 upon the announcement of the Proposed Transaction, indicating that the market believes that Oracle is acquiring Eloqua for a bargain.

42.     Not only does the Merger Consideration represent a discount to Eloqua's true current value, but it also fails to reflect the Company's undeniable growth potential. As Defendant Payne publicly stated in a Company press release issued on October 24, 2012: "Our continued strong execution, combined with the increasing demand for our Modern Marketing solutions and our ability to deliver proven value, *enabled us to grow subscription and support revenue by 32% year-over-year.*" (emphasis added). Indeed, securities analysts also recognize Eloqua's growth potential, predicting a growth rate for the Company of 99.77% and 40.37% for fiscal 2012 and 2013, respectively:

**EARNINGS ESTIMATES**

| | Qtr(12/12) | Qtr(3/13) | FY(12/12) | FY(12/13) |
|---|---|---|---|---|

| DESCRIPTION | QTR(12/12) | QTR(3/13) | FY(12/12) | FY(12/13) |
|---|---|---|---|---|
| Average Estimate | -0.06 | -0.06 | -0.27 | -0.16 |
| Number of Analysts | 4 | 4 | 4 | 4 |
| High Estimate | -0.05 | -0.06 | -0.25 | -0.14 |
| Low Estimate | -0.07 | -0.07 | -0.28 | -0.18 |
| Year Ago EPS | NA | NA | -116.74 | -0.27 |
| Growth Rate | NA | NA | +99.77% | +40.37% |

43.    Furthermore, the Merger Consideration does not adequately compensate Eloqua shareholders for the significant synergistic value that the Company will provide to Oracle, the key points of which were highlighted in a presentation to Eloqua's shareholders:

## Oracle and Eloqua
### A Compelling Combination

- Creates a comprehensive Customer Experience Cloud that transforms how customers buy products and services and how organizations market, sell, service and support them
  - Oracle offers best-in-class Sales, Commerce, Service, Content, and Social Clouds
  - Eloqua's modern marketing platform will become the centerpiece of the Oracle Marketing Cloud
  - Augmented with Oracle technologies including Analytics and Big Data
- Together, Oracle and Eloqua will deliver exceptional customer experiences that:
  - Create brand loyalty and advocacy for a customer's products and services
  - Drive broader purchases and repeat business
  - Increase revenue growth by better targeting and more efficient and lower cost selling
- Eloqua's management team and employees are expected to join Oracle and continue their focus facilitating excellence in marketing

For more information visit www.eloqua.com\oracle.

44.     To be sure, as Thomas Kurian, Executive Vice President of Oracle stated:

Eloqua's leading marketing automation cloud *will become the centerpiece of the Oracle Marketing Cloud* and is an important addition to the Oracle Customer Experience offering, which includes the Oracle Sales Cloud, Oracle Commerce Cloud, Oracle Service Cloud, Oracle Content Cloud and Oracle Social Cloud.

(emphasis added).

45.     And to make matter worse, Defendants have agreed to a barrage of Lockup Provisions to deter any potential topping bidders. Among other things, the Merger Agreement forbids Eloqua from soliciting alternative business combinations. In the event that a topping bidder were to emerge, the Merger Agreement requires the Company to provide Oracle with detailed information in writing about the topping bid, as well as copies of the communications Eloqua has with the topping bidder makes. The Company then has to provide Oracle with 48 hours notice prior to even holding a board meeting to discuss the topping offer. Then the Merger Agreement grants Oracle with lengthy, five-day matching rights. The Merger Agreement also requires Eloqua to reaffirm its recommendation of the Proposed Transaction within 10 days after requested by Oracle. The Merger Agreement also burdens Eloqua with a termination fee of $31.5 million if the Company accepts a topping bid, as well as up to $5 million in additional expenses. The collective layering effect of the deal protection devices, especially considering the highly-competitive software computing industry, serves to preclude topping bidders from emerging.

46.     If consummated, the Proposed Transaction will likely result in Eloqua shareholders losing their interest in the Company through a fraudulent process designed to inhibit other potential bidders in favor of Oracle. Unless enjoined by this Court, Defendants will continue to breach and/or aid the breaches of fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, which will deprive Class members of a fair and non-fraudulent sales process, all to the irreparable harm of Plaintiff and the Class.

47.     Plaintiff and the other members of the Class have no adequate remedy at law to address the irreparable harm facing them as a result of the Proposed Transaction and attendant failure of Defendants to maximize Eloqua shareholder value.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action individually and as a class action on behalf of all holders of Eloqua stock who are being and will be harmed by Defendants' actions described above (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

49.     This action is properly maintainable as a class action.

50.     The Class is so numerous that joinder of all members is impracticable. According to the Company's U.S. Securities and Exchange Commission ("SEC") filings, there were over 34 million shares of the Company's common stock outstanding on October 31, 2012. These shares are held by hundreds, if not thousands, of beneficial holders.

51.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

(a)     whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, candor, or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(b)     whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

18

      (c)     whether the Individual Defendants have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty, and fair dealing;

      (d)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

      (e)     whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

      (f)     whether Eloqua and Oracle are aiding and abetting the wrongful acts of the Individual Defendants.

52.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

53.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

54.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

55.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

56.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Breach of Fiduciary Duty of Due Care, Loyalty and Good Faith
### (Against the Individual Defendants)

57.     Plaintiff repeats and realleges each allegation set forth herein.

58.     Defendants have knowingly and recklessly, and in bad faith, violated fiduciary duties of care, loyalty, good faith and independence owed to the public shareholders of Eloqua and have acted to put the interests of the Board and Oracle ahead of the interests of Eloqua shareholders.

59.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, knowingly or recklessly, and in bad faith, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Eloqua.

60.     As demonstrated by the allegations above, Defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to the shareholders of Eloqua because, among other reasons, they failed to:

    (a)     fully inform themselves of the market value of Eloqua before entering into the Merger Agreement for the Proposed Transaction;

    (b)     act in the best interests of the public shareholders of Eloqua common stock;

    (c)     maximize shareholder value;

    (d)     obtain the best financial and other terms when the Company's independent existence will be materially altered by the Proposed Transaction; and

    (e)     act in accordance with their fundamental duties of good faith, due care, and loyalty.

61.     By reason of the foregoing acts, practices and course of conduct, Defendants have knowingly or recklessly, and in bad faith, failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

62.     Unless enjoined by this Court, Defendants will continue to knowingly or recklessly, and in bad faith, breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction which will exclude the Class from the maximized value they are entitled to all to the irreparable harm of the Class.

63.     As a result of Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive the real value of their equity ownership of the Company.

64.     Plaintiff and the members of the Class have an inadequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

65.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against the Individual Defendants. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

## COUNT II
### Aiding & Abetting the Individual Defendants' Breach of Fiduciary Duty
### (Against Eloqua and Oracle)

66.     Plaintiff repeats and realleges each allegation set forth herein except for the allegations contained within Count I.

67.     Defendant Eloqua and Oracle are sued herein as aiders and abettors of the breaches of fiduciary duties outlined above by the Individual Defendants, as members of the Board of Eloqua.

68.     The Individual Defendants breached their fiduciary duties of good faith, loyalty, and due care to the Eloqua shareholders by failing to:

(a)     fully inform themselves of the market value of Eloqua before entering into the Merger Agreement;

(b)     act in the best interests of the public shareholders of Eloqua common stock;

(c)     maximize shareholder value;

(d)     obtain the best financial and other terms when the Company's independent existence will be materially altered by the Proposed Transaction; and

(e)     act in accordance with their fundamental duties of good faith, due care and loyalty.

69.     Such breaches of fiduciary duties could not, and would not, have occurred but for the conduct of Defendants Eloqua and Oracle, which therefore, aided and abetted such breaches via entering into the Merger Agreement with Oracle.

70.     Defendants Eloqua and Oracle had knowledge that they were aiding and abetting the Individual Defendants' breach of their fiduciary duties to the Eloqua shareholders.

71.     Defendants Eloqua and Oracle rendered substantial assistance to the Individual Defendants in their breach of their fiduciary duties to the Eloqua shareholders.

72.     As a result of Eloqua and Oracle's conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiff and the other members of the Class have been, and will be, damaged in that they have been, and will be, prevented from obtaining a fair price for their shares.

73.     As a result of the unlawful actions of Defendants Eloqua and Oracle, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for Eloqua' assets and business and will be prevented from obtaining the real value of their equity

ownership in the Company. Unless the actions of Defendants Eloqua and Oracle are enjoined by this Court, they will continue to aid and abet the Individual Defendants' breach of their fiduciary duties owed to Plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value.

74.     Plaintiff and the other members of the Class have no adequate remedy at law.

75.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against Defendants Eloqua and Oracle. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants as follows:

A     Declaring that this action is properly maintainable as a class action;

B     Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of Defendants and is therefore unlawful and unenforceable;

C     Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain the highest possible price for shareholders;

D     Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interest of Eloqua shareholders until the process for the sale or proper auction of the Company is completed and the highest possible price is obtained;

E     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof;

23

F      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G      Granting any and all other further relief as this Court may deem just and proper.

DATED: January 3, 2012          CUNEO GILBERT & LADUCA, LLP

ROBERT J. CYNKAR (VSB # 23349)
DANIEL COHEN (VSB # 79836)
106-A South Columbus Street
Alexandria, VA 22314
Telephone: 202/789-3960
202/789-1813 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
CULLIN A. O'BRIEN
MARK J. DEARMAN
CHRISTOPHER C. MARTINS
120 East Palmetto Park Rd., Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL BARRON
DAVID WISSBROECKER
RICK ATWOOD
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff and the Class